**In re THE CONSOLIDATED FGH LIQUIDATING TRUST f/k/a Friede Goldman Halter, Inc. et al., Jointly Administered.**

**No. 01–52173 EE.**

United States Bankruptcy Court,
S.D. Mississippi.

Nov. 6, 2009.

Douglas S. Draper, for The Liquidating
Trustee.

Leslie A. Collins, Greta M. Brouphy, New Orleans, LA, David A. Wheeler, Biloxi, MS, for The Consolidated FGH Liquidating Trust.

E. Carroll Rogers, Peter B. Sloss, New Orleans, LA, Harris Bell Williams, Madison, MS, for OK Shipping Limited.

## MEMORANDUM OPINION GRANTING OK SHIPPING LIMITED'S AMENDED MOTION FOR LIMITED RELIEF FROM AUTOMATIC STAY

EDWARD ELLINGTON, Bankruptcy Judge.

The matter before the Court is the *Amended Motion for Limited Relief from Automatic Stay* (the "Amended Motion") filed by OK Shipping Limited ("OK Shipping") (Dkt. No. 7799), and the *Opposition to Amended Motion for Limited Relief from Automatic Stay* (the "Opposition to Amended Motion") filed by the Liquidating Trustee for The Consolidated FGH Liquidating Trust. (the "Liquidating Trustee") (Dkt. No. 7802). OK Shipping requests that it be permitted to complete arbitration commenced against Halter Marine, Inc. (NV) ("Halter"), one of the consolidated Debtors herein. The parties submitted the matter to the Court for a decision on the briefs without oral argument. (Dkt.

No. 7809).[1] Having considered the pleadings and memoranda and applicable authorities, the Court concludes that the Amended Motion should be granted to permit OK Shipping to proceed with binding arbitration as to determinations on liability and liquidation of OK Shipping's claims against Halter.

## I. FACTUAL BACKGROUND [2]

In April of 2001, Friede Goldman Halter, Inc. and certain affiliates (the "Debtors"), including Halter Marine, Inc., commenced petitions for relief under Chapter 11 of Title 11 of the United States Code by filing voluntary petitions.[3] The Chapter 11 cases were consolidated under Case No. 01–52173 SEG.[4]

### A. Proofs of Claims

On December 11, 2001, an order was entered establishing February 28, 2002, as the deadline for filing proofs of claims.[5] (Dkt. No. 1521).

On February 27, 2002, OK Shipping filed two proofs of claims in the Halter Marine, Inc. (NV) bankruptcy, showing an address for OK Shipping in Kingstown, Saint Vincent. The two proofs of claims appear to be identical, with each being in the amount of $3,685,914.53 plus interest and costs. Claim No. 3171 is file stamped as received by the bankruptcy court clerk. Claim No.

1. In correspondence dated August 27, 2009, the parties requested a decision on the matter without argument. The letter referenced Dkt. No. 1964, which was the original *Motion for Limited Relief from Automatic Stay* (the "Original Motion"). The Original Motion and the Amended Motion, filed on June 2, 2009, appear to be identical.

2. The factual background set forth herein is taken from pleadings and memoranda on file with the Court. The parties have asserted no factual disputes.

3. The bankruptcy case was originally assigned to Judge Edward R. Gaines. On February 9,

2009, the case was reassigned to Judge Edward Ellington.

4. A list of the entities constituting the consolidated Debtors is contained in footnote 1 of the adversary complaint filed on January 18, 2005, in which the Liquidating Trustee objected to OK Shipping's claim. (Adv. Proc. No. 05–05013 EE).

5. Over 3500 claims were filed totaling over $3 billion. The bankruptcy proceeding is nearing completion. The Liquidating Trustee indicated in the Opposition to Amended Motion that fewer than five claims objections remained to be heard at that time.

2780 is filed stamped as received by Poorman–Douglas, the servicing agent for proofs of claims in the Debtors' bankruptcy proceeding. As noted herein, OK Shipping concedes that the claims were duplicate claims and that only one claim was intended. The Court may, hereinafter, refer to a singular claim for OK Shipping.

The basis for the claims was listed as breach of a 1995 shipbuilding contract and negligent design and construction of a vessel.

## B. Original Motion for Relief from Stay

On March 20, 2002, less than 30 days after filing its proof of claim, OK Shipping filed its Original Motion requesting relief from the automatic stay (Dkt. No. 1964), and its *Memorandum in Support of Motion for Limited Relief from Automatic Stay* ("Original Memorandum") (Dkt. No. 1965). OK Shipping requested that the Court issue an order allowing it, "to complete the arbitration commenced against Halter Marine, Inc. (NV) ("Halter") in London pursuant to the terms and conditions of the Shipbuilding Contract dated June 1995 between the parties in order to resolve the disputes related to that Shipbuilding Contract and to liquidate OK's claim." *Original Motion* at 1.

In the Original Memorandum in support of the Original Motion, OK Shipping set out that in June of 1995, Air Sea Broker, Ltd., entered a shipbuilding contract with Halter Marine, Inc. (a/k/a/ Trinity Marine Group, Inc.) ("Halter"). Rights under the contract were assigned to OK Shipping. Pursuant to the contract, Halter built an aluminum utility vessel named the AFRICAN STAR 2 in a New Orleans, Louisiana shipyard. OK Shipping asserted the following:

> Following the delivery of the M/V AFRICAN STAR 2 by Halter to her owners the vessel suffered from excessive, unacceptable levels of vibration which resulted in numerous incidents including, but not limited to, a fracture to the vessel's hull caused by a propeller as a consequence of the propeller's shaft having broken away from its support; a strut supporting the shaft of another of the vessel's propellers coming apart; and another incident of a strut supporting a shaft of one of the vessel's propellers failing causing damage to the hull resulting in the vessel being beached on a deserted beach on the coast of Africa. These vessel problems resulted from the negligent design and construction of the vessel by Halter. As a consequence, OK suffered damages and losses including, but not limited to, the cost of repairs and modifications to the M/V AFRICAN STAR 2 in order to rectify the vibration problems and a loss of use and revenue.

*Original Memorandum* at 2.

OK Shipping further asserted in the Original Memorandum that under Article XIII, Section 1.2 of the contract, all disputes related to the contract are to be arbitrated in London (UK):

> All disputes arising after delivery of the Vessel shall be settled in London (UK) in accordance with the Arbitration Act 1950 and any re-enactment or statutory modification thereof being in force at the time and shall be referred to three arbitrators whereof one to be appointed by the **SHIPOWNER** and one by the **BUILDER.**
>
> The two arbitrators appointed by the parties shall jointly appoint the third arbitrator, who should be a reputable British lawyer, to act as the chairman of the arbitration board. All of the arbitrators shall have marine experience.

*Original Memorandum* at 3.

Arbitration proceedings were commenced by OK Shipping against Halter in

London in October of 1998, and an arbitrator was appointed by OK Shipping. An injunctive action was then commenced by Halter in Louisiana, and was removed to the United States District Court for the Eastern District of Louisiana by OK Shipping. A stay order regarding the arbitration proceeding was obtained to allow a technical assessment of the matter by the vessel's classification society, the American Bureau of Shipping ("ABS"). The ABS report was submitted to the parties in August of 2000. The parties were unable to settle the matter through the ABS referral process and OK Shipping notified Halter of its intent to continue with the arbitration. Halter then appointed an arbitrator and OK Shipping began preparation for submission to the arbitration tribunal. Halter's April 2001 bankruptcy petition stayed the arbitration proceedings.

OK Shipping seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) [6] for the limited purpose of proceeding with arbitration to resolve disputes relating to the shipbuilding contract and to liquidate its claim. OK Shipping asserts that, "the issues underlying this dispute involve technical and specialized vessel construction and design issues which require substantial expertise to resolve." *Memorandum in Support of Amended Motion* at 18.

On April 14, 2002, the Debtors filed their *Opposition of Debtors to Motion for Limited Relief from Automatic Stay filed by OK Shipping Limited* (the "Opposition").[7] (Dkt. No. 2093). The Debtors gave a detailed background of the operations of Friede Goldman Halter, Inc., with its various subsidiaries as multinational, worldwide leaders in the design, manufacture, conversion and modification of equipment for offshore energy and maritime industries. The Debtors noted that the parties were in the beginning phase of the arbitration at the time the bankruptcy was commenced and that discovery had not been completed. The Debtors contended that there was no cause to lift the stay, that arbitration would be burdensome, that the issues could be adjudicated through the claims process, that arbitration would demand executive time and effort that could be directed toward operations and a plan of reorganization, that lifting the stay would have an adverse impact upon the reorganization, and there would be no harm to OK Shipping if the stay remained in place.[8]

On May 30, 2002, an order was entered by consent of the parties extending the stay provided by § 362 until a determination by the Court. Subsequent to that time, numerous minute entries were noted by the bankruptcy clerk's office to the effect that the parties were in agreement as to extensions of discovery. Notations in 2003 indicated there were issues relating

**6.** Hereinafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

**7.** Opposition to the Original Motion was also filed by Foothill Capital Corporation on April 15, 2002 in its *Answer, Response and Objection of Foothill Capital Corporation, to Motion for Relief from the Automatic Stay filed by OK Shipping Limited.* ("Foothill's Objection") (Dkt. No. 2091). Foothill's Objection was dis-

missed with prejudice by order dated August 27, 2009. (Dkt. No. 7811).

**8.** Over seven years have passed since the Original Motion and Opposition. Since that time the plan has been confirmed and the Liquidating Trustee has nearly completed its obligations thereunder. Therefore, some of these asserted defenses to the motion for relief from the stay are no longer valid due to the changed status of this bankruptcy proceeding.

to production of an insurance policy. Correspondence from counsel for OK Shipping in April and in August of 2004 indicated that OK Shipping would be in a position to advise the Court of whether they would withdraw or proceed with their motion for relief from stay when they received discovery responses from Halter regarding all risks, or errors and omissions policies that may have been in effect.

### C. Plan confirmed

On December 30, 2003, the Fourth Amended Plan of Reorganization Under Chapter 11 was confirmed, with an Effective Date of the Plan of January 13, 2004. Under its terms the Liquidating Trustee was created, becoming the appointed representative of each of the Debtors' Estates.

### D. Adversary Complaint

On July 6, 2004, the Liquidating Trustee for the Consolidated FGH Liquidating Trust filed its *Objection on OK Shipping Limited Trust Houses's Proofs of Claim* (the "Objection to Claim"). (Dkt. No. 4931). The Objection to Claim noted OK Shipping's proof of claim on the bases of breach of the shipbuilding contract and negligent design and construction of the vessel. The Liquidating Trustee's objection included the following:

> The Liquidating Trustee asserts that the vessel was built in a workman-like manner and free from any defects causing damage. Although the Liquidating Trustee asserts that there is no liability on the part of the Debtors as sought in claimant's proof of claim no. 2780, only to the extent there is a finding of liability on the part of the Debtors for the construction of the vessel, whatever damages owed for the liability found are not owed by the Debtors but instead they are covered under the builders risk insurance policy and the comprehensive general liability insurance policy.

> Again, the Liquidating Trustee denies this and any and all other liability on the part of the Debtors as asserted by the Claimant. Accordingly, the Liquidating Trustee is requesting that this Court issue an order disallowing and expunging the Claimant's proof of claim no. 2780.

> Furthermore, by this Objection, the Liquidating Trustee is seeking to disallow and expunge proof of claim no. 3171 filed by Claimant on the additional basis that the claim is a duplicate of another claim or a duplicative claim filed against multiple Debtor entities.... Pursuant to Article V of the Plan, the Debtors have been substantively consolidated. Accordingly, duplicate claims filed against multiple Debtor entities will be deemed as one claim and have a potential of only one obligation of the Liquidating Trustee. Thus, the Liquidating Trustee is requesting that this Court enter an order disallowing and expunging proof of claim no. 3171 as "Duplicate."

Objection to Claim at 4–5.

On August 2, 2004, OK Shipping filed its *Opposition/Objection to the Liquidating Trustee's Notice on Objection* ("Opposition") (Dkt. No. 5336), opposing the Objection to Claim.

On January 18, 2005, the Liquidating Trustee filed an adversary *Complaint Regarding OK Shipping Limited Trust House's Proofs of Claim,* (Adv. Proc. No. 05–05013 EE) (the "Adversary Complaint"), containing allegations similar to those in the Objection to Claim. On the same date, the Liquidating Trustee filed a motion to convert its Objection to Claim to the Adversary Proceeding and to have the Opposition of OK Shipping recognized as an answer to the Adversary Proceeding. (Dkt. No. 6193). On January 19, 2005, an order was entered granting that motion and converting the Objection to Claim to

the referenced Adversary Proceeding and recognizing the Opposition filed by OK Shipping as its answer to the Adversary Complaint.[9] (Dkt. No. 6214)(Adv.Dkt. No. 4).

In its Opposition, OK Shipping pointed out that the Liquidating Trustee asked the Court to disallow the claim on three bases; that damages for liability were not owed by the Debtors but were covered by insurance policies, that the claim is duplicative, and that OK Shipping provided insufficient documentation in support of its claim.

OK Shipping noted that it had filed its motion requesting limited relief from the stay to complete the arbitration commenced in London, and that attempts had been made to obtain information regarding insurance coverage for the claims asserted. OK Shipping further noted its position that the Debtors remained liable regardless of insurance coverage.

Regarding the duplicate claim, OK Shipping stated as referenced above, that it never intended to file anything more than one proof of claim and that any duplicative submissions was merely a clerical error easily rectified. OK Shipping stated that the Court was at liberty to designate one of the proofs of claims as the official number of the proof of claim filed by OK Shipping.

OK Shipping further contended that it did provide sufficient documentation to establish its claim that damages were caused by negligent design and construction and that costs of repairs and loss of revenue were incurred.

Numerous agreed orders extending the discovery deadline and the time for contacting the Court to report a settlement or to set a hearing date were entered in the

Adversary Proceeding until October 2008. (Adv.Dkt.Nos. 8, 15, 18, 20, 22, 26, 33, 36). Each of the orders was signed by counsel for both the Liquidating Trustee and OK Shipping. In October of 2008, the Clerk's Office notified the parties that action was needed to prevent the proceeding from being dismissed. (Adv.Dkt. No. 37). On October 7, 2008, The Liquidating Trustee responded (Adv.Dkt. No. 38) to the Clerk's Notice indicating that with consent of OK Shipping the parties wished to extend the discovery deadline an additional six months and to continue to pursue settlement. However, on October 10, 2008, the Liquidating Trustee filed a request for a status conference seeking resolution through the Court's procedures, indicating that the attempt to settle had been unsuccessful to date. (Adv.Dkt. No. 40). On January 5, 2009, a *Consent Order Regarding Discovery Deadline* was entered ordering that discovery be completed by April 30, 2009, with a reservation for additional time if necessary.

### E. Pretrial Conference/Amended Motion

A pretrial conference was scheduled on the Adversary Proceeding as well as on the Original Motion for relief from stay for April 20, 2009. At the conference, counsel for the parties informed the Court that the question of insurance coverage was not yet settled. Additionally, it was noted that under the confirmed plan, there would be a distribution of approximately 6.5% at this point in the proceedings.

A telephonic conference was set for May 12, 2009, to discuss insurance and further proceedings. At that time, the parties informed the Court that there was no insurance coverage on the matter. It was de-

---

**9.** The Opposition, Dkt. No. 5336 in the main Case No. 01–52173, also became the Answer (Dkt. No. 3) in the Adversary Proceeding No.

05–05013. Reference to Opposition herein includes the filing in the main file and in the Adversary Proceeding.

cided that the pleadings would be amended and that the matter would be set for pre-trial. (Adv.Dkt. No. 54).

On May 18, 2009, an order was entered requiring that OK Shipping file its Amended Motion for Limited Relief from Automatic Stay by June 2, 2009, and that the Liquidating Trustee file its Amended Opposition by June 23, 2009. (Adv.Dkt. No. 55) (Dkt. No. 7794).

On June 2, 2009, OK Shipping filed its *Amended Motion for Limited Relief from Automatic Stay* ("Amended Motion") and *Memorandum in Support of Amended Motion for Limited Relief from Automatic Stay.* (Adv.Dkt. No. 56) (Dkt.Nos. 7799, 7798). The Amended Motion, as stated above, appears to be identical to the Original Motion and requests relief from the stay to permit OK Shipping to complete arbitration against Halter and to liquidate its claim.

On June 23, 2009, the Liquidating Trustee filed its Opposition to Amended Motion (Adv.Dkt. No. 57)(Dkt.No. 7802). On July 9, 2009, OK Shipping filed its *Reply Memorandum in Support of Amended Motion for Limited Relief from Automatic Stay.* (Dkt. No. 7804).

On August 27, 2009, the parties submitted correspondence to the Court indicating that both the Liquidating Trustee and OK Shipping desire that the Court render its opinion on the briefs on the request for relief from stay without oral argument or evidentiary presentation. (Dkt. No. 7809).

## II. CONCLUSIONS OF LAW

### A. Jurisdiction

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. The Amended Motion is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(G).

### B. Discussion

OK Shipping requests that the stay be lifted for cause pursuant to § 362(d)(1) so that it can proceed with arbitration in London to resolve the disputes related to the shipbuilding contract and to liquidate its claim. OK Shipping also contends that the Court has no discretion to refuse to compel arbitration, and that even if it does have discretion, it should rule in favor of allowing arbitration.

The Liquidating Trustee asserts that OK Shipping has not established cause for relief from the stay. Additionally, the Liquidating Trustee asserts that the dispute with OK Shipping is a core proceeding, and that OK Shipping has misstated the law in its assertion that the Court lacks discretion to deny the Amended Motion due to the non-core nature of the dispute. The Liquidating Trustee further contends that the right to arbitrate has been waived by OK Shipping. The issue of waiver will be addressed first.

#### 1. Waiver

■ In its Opposition to Amended Motion, the Liquidating Trustee asserts that OK Shipping waived its right to arbitrate by taking action inconsistent with the right to arbitrate. The Liquidating Trustee takes the position that factors evidencing waiver include a failure to pursue its motion, filing proofs of claims, filing of discovery and seeking extensions, not asserting arbitration rights in its opposition to claim objections, and attending pre-trial conferences. The Liquidating Trustee asserts prejudice by OK Shipping's late assertion of its right to arbitrate claiming a delay in closing of the estate, costs and expense to arbitrate in London, inability to control witnesses who may not travel to London and delay in distribution to creditors.

OK Shipping asserts that by filing a proof of claim it did not waive its right to

invoke arbitration and that it did not take action inconsistent with the pursuit of arbitration. OK Shipping pointed out that it filed its proof of claim within the deadline set by the Court, and that less than a month later, it filed its Original Motion requesting relief from the stay to complete arbitration and that it propounded discovery. The Liquidating Trustee did not file its Objection to Claim until over two years later, and the Adversary Complaint was filed by the Liquidating Trustee subsequent to that time.

The court in *Herrington v. Wells Fargo Bank, Minnesota, N.A. (In re Herrington)*, 374 B.R. 133 (Bankr.E.D.Pa.2007), stated the following on the issue of whether filing a proof of claim constitutes a waiver of the right to invoke an arbitration provision:

> To the extent the debtor's argument imputes significance to Wells Fargo's filing of a proof of claim, I note that numerous courts have concluded that a creditor who files a proof of claim does not, by that act alone, waive its contractual right to arbitrate a dispute. *See, e.g., In re Kaiser Group Int'l, Inc.*, 307 B.R. 449, 454–55 (D.Del.2004); *In re Hart Ski Mfg. Co.*, 22 B.R. 763, 765 (D.Minn. 1982), *aff'd*, 711 F.2d 845 (8th Cir.1983); *In re Mor–Ben Ins. Markets Corp.*, 73 B.R. 644, 647 (9th Cir. BAP 1987) ("A claim may be filed to secure a creditor's right to partake in distribution of the debtor's estate without waiving his right to arbitration."); *In re Transport Associates, Inc.*, 263 B.R. 531, 536 (Bankr. W.D.Ky.2001) ("Bankruptcy courts uniformly hold that filing a proof of claim does not waive a party's right to invoke an arbitration provision."); *see also In re Mintze*, 434 F.3d at 225–26 (adversary proceeding commenced after defendant/creditor filed a proof of claim was arbitrable); *In re Cooley* (same). Thus, Wells Fargo has not waived any contrac-

> tual arbitration rights simply by filing its claim in this chapter 13 case. Nor would an objection to the proof of claim be *per se* non-arbitrable. *See In re Transport Associates, Inc.*, 263 B.R. at 535.

*Id.* at 147.

The court in *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085 (8th Cir. 2007), cited by both parties, noted the following on waiver of the right to arbitrate:

> "[I]n light of the strong federal policy in favor of arbitration, any doubts concerning waiver of arbitrability should be resolved in favor of arbitration." *Dumont v. Saskatchewan Gov't Ins.*, 258 F.3d 880, 886 (8th Cir.2001) (quoting *Ritzel Communications v. Mid–Am. Cellular Tel. Co.*, 989 F.2d 966, 968–69 (8th Cir. 1993)); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

> A party may be found to have waived its right to arbitration if it: "(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts." *Ritzel*, 989 F.2d at 969. Green Tree concedes that it knew at all relevant times that the arbitration provision in Lewallen's loan agreement gave it an existing right to arbitrate. It contends, however, that it did not act inconsistently with its right to arbitrate and that Lewallen suffered no prejudice.

> A party acts inconsistently with its right to arbitrate if the party "[s]ubstantially invoke[s] the litigation machinery before asserting its arbitration right." *Ritzel*, 989 F.2d at 969 (quoting *E.C. Ernst, Inc. v. Manhattan Constr. Co. of Tex.*, 559 F.2d 268, 269 (5th Cir.1977)). A party substantially invokes the litiga-

tion machinery when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner. *Stifel,* 924 F.2d at 158.

*Id.* at 1090. *See Gulf Guaranty Life Insurance Company v. Connecticut General Life Insurance Company,* 304 F.3d 476, 484 (5th Cir.2002)(there is a strong presumption against finding that a party waived its contractual right to arbitrate). OK Shipping contends that it did not act inconsistently with its right to arbitrate and that its motion to proceed with arbitration was filed promptly.

In *Republic Ins. Co. v. Paico Receivables, LLC,* 383 F.3d 341 (5th Cir.2004), the Fifth Circuit discussed the impact of litigation activities on the right to arbitrate as follows:

"Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Subway,* 169 F.3d at 326 (quoting *Miller Brewing Co. v. Fort Worth Distrib. Co.,* 781 F.2d 494, 497 (5th Cir.1986)). There is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden. *Subway,* 169 F.3d at 326.

To invoke the judicial process "[t]he party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Subway,* 169 F.3d at 329. Further, "a party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate." *Id.* at 328. The district court found that Republic invoked the judicial process by waiting to file its motion to

compel arbitration until days before the trial was originally scheduled to begin.

Republic undertook extensive litigation activities before asserting its right to arbitrate under the Settlement Agreement. It answered PRLLC's counterclaims; conducted full-fledged discovery, including four depositions; amended its complaint; and filed the required pretrial materials with the district court. In addition, before Republic filed its motion to compel arbitration, it filed numerous other motions, including: two motions to compel discovery, a motion for summary judgment, and a motion in limine attempting to limit the evidence that PRLLC could produce at trial. Republic thus demonstrated "a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Id.* at 329; *cf. Price v. Drexel Burnham Lambert, Inc.,* 791 F.2d 1156, 1159, 1162 (5th Cir.1986) (holding that the party moving for arbitration had waived that right because it had "initiated extensive discovery, answered twice, filed motions to dismiss and for summary judgment, filed and obtained two extensions of pre-trial deadlines, all without demanding arbitration").

*Id.* at 344–45. The Fifth Circuit discussed, further, the requirement of prejudice to a finding of waiver of the right to arbitrate:

In addition to the invocation of the judicial process, there must be prejudice to the party opposing arbitration before we will find that the right to arbitrate has been waived. "[F]or purposes of a waiver of an arbitration agreement: 'prejudice ... refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.'" *Subway,* 169 F.3d at 327 (quoting *Doctor's As-*

socs. v. Distajo, 107 F.3d 126, 134 (2d Cir.1997)) (omission in original). Ultimately, however, "[t]he question of what constitutes a waiver of the right of arbitration depends on the facts of each case." *Tenneco Resins, Inc. v. Davy Int'l, AG,* 770 F.2d 416, 420 (5th Cir. 1985).

Three factors are particularly relevant when making a prejudice determination. *See Price,* 791 F.2d at 1159, 1162 (affirming the district court's finding that the " 'mounting attorney's fees,' 'seventeen month delay' [before asserting the right to arbitrate], and 'disclosure which has resulted from the numerous depositions and production of documents' constituted prejudice sufficient" to support the waiver of arbitration). First, while discovery relating to non-arbitrable claims is not prejudicial, where the pretrial activity was related to all of the parties' claims, including those that were conceded to be arbitrable, arbitration would result in prejudice. *Id.* at 1159. Second, the time and expense incurred in defending against a motion for summary judgment could prejudice the party opposing arbitration. *Id.* at 1162. Third, a party's failure to timely assert its right to arbitrate a dispute is also relevant to the prejudice determination. *Id.* at 1161.

"While the mere failure to assert the right to demand arbitration does not alone translate into a waiver of that right, such failure does bear on the question of prejudice, and may, along with other considerations, require a court to conclude that waiver has occurred." *Id.* (internal citations omitted). The failure to demand arbitration affects the burden placed upon the party opposing waiver. When a timely demand for arbitration was made, "the burden of proving waiver falls even more heavily on the shoulders of the party seeking to prove waiver." *Tenneco Resins,* 770 F.2d at 420 (internal quotations omitted). "A demand for arbitration puts a party on notice that arbitration may be forthcoming, and therefore, affords that party the opportunity to avoid compromising its position with respect to arbitrable and nonarbitrable claims." *Price,* 791 F.2d at 1161. In contrast, "where a party fails to demand arbitration . . ., and, in the meantime engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced." *Id.*

*Id.* at 346–347.

The Court also considered the more recent case from the Fifth Circuit of *Nicholas v. KBR, Inc.,* 565 F.3d 904 (5th Cir. 2009) which also applied invocation of the judicial process and prejudice as applicable factors in a determination of waiver of the right to arbitrate.

The Court concludes, in light of these authorities and the contentions of the parties, that OK Shipping has not taken any action that is inconsistent with its right to arbitrate that would constitute a waiver of that right. The filing of the proof of claim protected its rights in the bankruptcy proceeding but did not constitute a waiver of arbitration. The filing of the Original Motion soon after the filing of the bankruptcy petition by the Debtors indicated the intent of OK Shipping early on in the case to proceed with arbitration and put the Debtors on such notice. The only litigation activity on the part of OK Shipping has been in documenting its proof of claim, the filing of its motions to proceed with arbitration, and responding to the objection to claim, and apparently some amount of discovery. The file reflects numerous agreed orders to extend discovery by the parties.

Notations in the file indicate there was an ongoing issue as to whether there was insurance that covered this matter, and that may have affected decisions as to how the parties wished to proceed. Apparently, it was only recently determined that there was no insurance coverage.

Considering the lack of proceedings on OK Shipping's underlying claim that have taken place to this point, except as to numerous agreed discovery extensions that may have been intended for purposes of determining insurance coverage, the Court concludes that the judicial process has not been substantially invoked. Additionally, there has been no showing of prejudice or unfairness to the Liquidating Trustee by any delay, expenses or damage to its position. Significantly, OK Shipping timely filed its request for relief from stay to arbitrate. The Liquidating Trustee has not met the heavy burden required to show that OK Shipping waived its right to arbitrate.

### 2. Cause to Lift Stay

■ OK Shipping requests relief on the basis of the Court's discretion in determining whether cause exists to modify the stay to allow litigation to proceed in another forum. OK Shipping cites this Court's decision in *In re Armstrong and Guy Law Office, LLC,* 2007 WL 4571152 (Bankr. S.D.Miss. Dec. 21, 2007) in discussing relevant factors courts have considered in determining whether such cause exists:

> The issue before the Court is whether the automatic stay should be modified pursuant to § 362 of the Bankruptcy Code to allow the underlying litigation to proceed to trial in the Southern District of Texas. Section 362(d)(1) provides that the bankruptcy court may grant relief from the automatic stay "for cause." Such "cause" includes allowing an action to proceed to completion in another tribunal. *In re Curtis,* 40 B.R.

795, 799 (Bankr.D.Utah 1984); *see also* H.R.Rep. No. 595, 95th Cong., 1st Sess., 341 (1977)("It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere."). Courts have developed twelve factors to examine when determining whether "cause" exists to modify the stay to allow litigation to proceed in another forum. They are:

1. Whether the relief will result in a partial or complete resolution of the issues;

2. The lack of any connection with or interference with the bankruptcy case;

3. Whether the foreign proceeding involves the debtor as a fiduciary;

4. Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases;

5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

6. Whether the action essentially involves third parties and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

7. Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee, and other interested parties;

8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);

9. Whether the movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

10. The interest of judicial economy and the expeditious and economical determination of litigation for the parties;

11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

12. The impact of the stay on the parties and the balance of the hurt.

*In re Curtis,* 40 B.R. at 799–800 (cited favorably in *In re Sonnax Industries, Inc.,* 907 F.2d 1280 (2nd Cir.1990)); *see also 3 Collier on Bankruptcy,* ¶ 362.07[3][a] (Matthew Bender 15th Ed. Revised 2006) (cause to lift stay includes permitting litigation to be concluded in another forum). Not all of the factors will be relevant in every case. *In re Cook,* 232 B.R. 554, 557 (Bankr.D.Conn. 1999).

*Id.* at *1–2.

■ In examining these factors, the Court makes the following observations.[10] The first factor requires consideration of whether the relief requested will result in a partial or complete resolution of the issues. Complete resolution of issues relating to liability and liquidation of the claim could be achieved in either the bankruptcy proceeding or through the arbitration process. If the claim is arbitrated, additional steps would remain for any claim that may be awarded to OK Shipping to be processed through the bankruptcy proceeding and any distribution made; however, the Court would consider this a minimal factor considering the near completion of the bankruptcy proceedings. Therefore, the Court views the first factor as a neutral factor that does not weigh more heavily in favor of one forum over the other.

The second factor considers the lack of any connection with or interference with the bankruptcy case. The Court does not find that proceeding with arbitration on this particular matter would interfere with the bankruptcy case or with the claims process, particularly at the stage of the bankruptcy proceeding where the plan has long since been confirmed and distributions to creditors have largely been made. The Liquidating Trustee stated in its Opposition to Amended Motion that it intended to close the case and make a final distribution in 2009. The Court does not consider that the timing of the bankruptcy case's closing would be significantly impacted, if at all, by the factor of where OK Shipping's claim is liquidated, whether in a bankruptcy proceeding or through arbitration.

In addition, some of the defenses to the Original Motion indicating that arbitration would interfere with the bankruptcy case are no longer valid, as previously noted. Defenses raised as to demands that arbitration would place upon executive time and effort needed for reorganization are moot, given that the plan has been confirmed and that the Liquidating Trustee has nearly completed its duties.

The fourth factor to consider is whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases. This factor weighs heavily in favor of allowing arbitration to proceed. The arbitration board would function as a specialized tribunal with expertise as to technical issues involving metallurgical analysis, vessel design and construction. The arbitration agreement between the

---

10. Factors 3, 6, 8 and 9 are not considered applicable by the parties and, likewise, are not considered here. *See Montague Pipeline Technologies Corp., v. Grace/Lansing & Grace Industries, Inc. (In re Montague Pipeline Tech-* *nologies Corp.),* 209 B.R. 295, 305 (Bankr. E.D.N.Y.1997)(court need not apply all *Sonnax* factors but may apply only those factors which are appropriate).

parties evidenced the desire to have any contract disputes heard by the specialized tribunal, notwithstanding that this Court could hear the matter and make determinations as to the issues. The arbitrators that would be available, as set out in the briefs, have had maritime and arbitration experience.[11]

The fifth factor considers whether the Debtors' insurance carrier has assumed full financial responsibility for defending the litigation. The parties have determined that there is no known insurance coverage for the claim involved. The Liquidating Trustee would bear the expenses associated with defending the claim, whether in this Court or in arbitration in London.

The seventh factor for consideration is whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee, and other interested parties. The Court does not find that litigation or proceedings in another forum would prejudice the interests of other creditors or interested parties, given that the posture of the case at this time does not involve other creditors, distributions have largely been made, and few claims remain outstanding. There has been no showing that any potential recovery against the Debtors would negatively impact other creditors to the extent that the right to arbitration should be denied. Additionally, payment of OK Shipping's claim is not considered by the Court, in and of itself, as prejudicial to other creditors, even though it may reduce a potential distribution to them.

Under the circumstances of this case, examination of the seventh factor also overlaps considerations for factors ten and twelve. The tenth factor considers the

interest of judicial economy and the expeditious and economical determination of litigation for the parties. The twelfth factor considers the impact of the stay on the parties and the balance of the hurt. As to these factors, the Court does not find that the parties have shown a material difference whether the matter is arbitrated in London or litigated in the bankruptcy proceeding, when specifically considering potential time delays, and attendant costs for legal fees and witnesses and convenience of the parties. The report from the ABS referral process has already been obtained and some documentation has apparently already been exchanged by the parties. Therefore, there would be no additional expense or delays regarding those issues. It is noted, that if the matter is heard in the bankruptcy court, any appellate process that may be invoked could potentially delay the ultimate outcome of the matter, as opposed to a process of binding arbitration without appeal. *See Nicholas v. KBR, Inc.,* 565 F.3d 904, 907 (5th Cir.2009) (recognizing that one of the primary goals of arbitration is to avoid the expense of litigation).

No proof has been submitted to the Court to indicate there would be any greater expense associated with having the matter arbitrated in a specialized tribunal in London than those expenses that would be generated in a full trial in a bankruptcy proceeding. Nothing has been produced to show that expenses of travel of any parties to London would be significantly greater, if at all, to any travel expenses involved in bankruptcy litigation. The location of potential expert and lay witnesses could be from around the world in light of the factual allegations where the ship was

---

11. *See Continental Casualty Company v. Pfizer, Inc. (In re Quigley Company, Inc),* 361 B.R. 723, 744 (Bankr.S.D.N.Y.2007)(considered that arbitrators may have specialized knowledge).

built by a debtor company with affiliated entities that operated globally, and where the ship was ultimately beached on the coast of Africa, after apparently numerous other incidents at other times and places that required repairs and expenditures. In addition, no evidence has been submitted to show that the lawyers involved for the Liquidating Trustee or for OK Shipping would be involved in the London proceedings or would have associated travel expenses. The parties to this proceeding are, or were, involved with worldwide businesses, not necessarily local to this district. Travel to London for the parties, witnesses or for counsel involved in this matter does not impress the Court as a significant factor, particularly in the absence of any proof as to what costs or expenses may be incurred.

The eleventh factor requires consideration of whether the foreign proceedings have progressed to the point where the parties are prepared for trial. Although there have been some steps taken and some progress made in proceeding toward arbitration, there was no advanced progression of the matter through arbitration. Nor has there been any significant progression toward trial through the matters filed in the bankruptcy proceeding. This factor does not weigh significantly in favor of either party.

Also, in further consideration of the twelfth factor on the impact of the stay and balance of hurt to the parties, the Court notes that OK Shipping has been delayed years in the pursuit of its claim because of the bankruptcy proceeding, and that at this stage of the proceedings, OK Shipping desires to pursue its claim through the contractually created right to arbitrate.

Taking the applicable factors as a whole, the Court considers that they weigh in favor of arbitration. Moreover, given that the arbitration board would act as a specialized tribunal with expertise on the matters in this case, and given the strong policy toward favoring arbitration where the parties contracted for the right to arbitrate, the Court concludes, in consideration of all of the circumstances of this case, that the criteria necessary for the Court to lift the stay for cause under § 362(d)(1) have been established.

### 3. Core Proceeding/Discretion

Although the Court has determined that the stay should be lifted for cause under § 362(d)(1), the Court acknowledges OK Shipping's contentions regarding the Court's discretion as to matters relating to enforcement of arbitration agreements. OK Shipping asserts that bankruptcy courts generally have no discretion to refuse to compel arbitration in non-core matters and that it must lift the stay to allow the action to proceed to arbitration. OK Shipping's contention is that the dispute involves the negligent design and construction of the vessel, and is based upon a state contract action and not a right created by federal bankruptcy law, and is a non-core matter.

Regarding this issue, the Fifth Circuit has held that:

> While it is generally accepted that a bankruptcy court has no discretion to refuse to compel the arbitration of matters not involving "core" bankruptcy proceedings under 28 U.S.C. § 157(b), this court has held that a bankruptcy court may decline to stay a proceeding whose underlying nature derives exclusively from the provisions of the Bankruptcy Code. *National,* 118 F.3d at 1067. In *National Gypsum,* this court cited with approval the Third Circuit's conclusion in *Hays* that bankruptcy courts generally do not have discretion to decline to stay proceedings involving non-core matters. *Id.* at 1066 (stating that

*Hays* makes "eminent sense" and is "universally accepted" with respect to debtor-derivative, non-core matters). A bankruptcy court does possess discretion, however, to refuse to enforce an otherwise applicable arbitration agreement when the underlying nature of a proceeding derives exclusively from the provisions of the Bankruptcy Code and the arbitration of the proceeding conflicts with the purpose of the Code. *Id.* at 1067 (noting *McMahon,* 482 U.S. at 226–27, 107 S.Ct. at 2337–38).

We reasoned in *National Gypsum* that, "at least where the cause of action at issue is not derivative from the debtor's pre-petition legal or equitable rights but rather is derived entirely from federal rights conferred by the Bankruptcy Code," a bankruptcy court retains "significant discretion" to refuse to stay the adversary proceeding and compel arbitration. 118 F.3d at 1069. Such discretion permits the bankruptcy court to assess whether arbitration would be consistent with the purpose of the Code, "including the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders." *Id.* *Gandy v. Gandy (In re Gandy),* 299 F.3d 489, 495 (5th Cir.2002) (footnote omitted).

The Liquidating Trustee contends that the matter is a core proceeding and that the Court does have discretion to deny the request for arbitration where the proceeding conflicts with purposes of the Code. The Liquidating Trustee cites cases to support the argument that OK Shipping submitted to the Court's jurisdiction by filing a proof of claim and that any non-core matters became core proceedings. *See Statutory Committee of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC),* 285 B.R. 822, 831–32 (S.D.N.Y.2002) (creditor submitted itself to power of bankruptcy court to determine its claim by filing a response to claim objections in an adversary proceeding, and non-core claims against the creditor in the adversary proceeding became core); *Phico Group, Inc. v. Persofsky (In re Phico Group, Inc.),* 304 B.R. 170, 173 (Bankr. M.D.Pa.2003) (filing of claim triggers process of allowance and disallowance of claims).

However, because of the Court's analysis of OK Shipping's request for relief from stay for cause under § 362(d)(1),[12] it is not necessary to make determinations in this case as to whether the matter relating to the underlying claim is a core proceeding. *See In re Shores of Panama, Inc.,* 387 B.R. 864, 866 (Bankr.N.D.Fla.2008)(holding it was not necessary to delineate with precision the contours of core as opposed to non-core because assuming the action is core, enforcing the arbitration provision would not inherently conflict with underlying purposes of the Bankruptcy Code).

### C. Conclusion

Based on the foregoing analysis, the Court concludes that OK Shipping did not waive its right to assert arbitration. The Court further concludes that the stay should be lifted for cause under 11 U.S.C. § 362(d)(1) for purposes of allowing arbitration to proceed and for entry of a final and binding decision or award, but not for entry of judgment in any court of competent jurisdiction or for purposes of collec-

---

**12.** *See Kittay v. Landegger (In re Hagerstown Fiber Limited Partnership),* 277 B.R. 181, 203 (Bankr.S.D.N.Y.2002)(noted distinction as to whether request to pursue arbitration had been made in the context of a motion for relief from stay or by motion to compel arbitration).

tion of any award that may be obtained by OK Shipping through the arbitration process.

At this time the Court will make no determination on matters in Adversary Proceeding No. 05–05013 EE regarding the Liquidating Trustee's Objection to Claim of OK Shipping. Matters involving the claims process and any distribution that may ultimately be made to OK Shipping, if any, will be reserved until a determination is made on the merits of the claim as to liability and liquidation of the claim, subject to further order of the Court.

A separate judgment will be entered in accordance with Federal Rule of Bankruptcy Procedure 9014.