In re TRANSPORT ASSOCIATES, INC., Debtor.

No. 93–30016(7).

United States Bankruptcy Court, W.D. Kentucky.

May 1, 2001.

Transport Associates, Inc., A Kentucky Corporation, Louisville, KY, pro se.

John Baxter Schilling, Schilling and Schilling, Louisville, KY, trustee.

Michael S. Davis, Anthony I. Giacobbe, Jr., Zeichner Ellman & Krause LLP, New York, NY, for National Union Fire Ins. Co.

## MEMORANDUM

DAVID T. STOSBERG, Chief Judge.

This case comes before the court on the motion of National Union Fire Insurance Company of Pittsburgh, Pa. (hereinafter referred to as "NU") to refer the Trustee's objection to proof of claim to arbitration, pursuant to 9 U.S.C. §§ 1–14. This matter arises from the objection of the Trustee, J. Baxter Schilling, to National Union's proof of claim. After engaging in discovery and clarifying the Trustee's claims, NU filed the arbitration motion, both parties fully briefed the issue, and the court conducted oral arguments on January 29, 2001. We now decide the question of whether to enforce the arbitration clause in the contract between NU and Transport Associates.

### Factual Background

The debtor and NU entered into a contract for insurance coverage of the debtor's losses resulting from injuries sustained by employees. To memorialize the terms of this insurance program, the parties executed the Indemnity Agreement on May 6 and June 12, 1992, effective October 5, 1991. Under the Indemnity Agreement, NU provided insurance coverage for the debtor and the debtor paid premiums plus additional payments based upon the first $500,000 in loss per occurrence. Unlike most insurance contracts, in this case, the insured, the debtor, agreed to indemnify the insurer, NU.

The Indemnity Agreement contains an arbitration clause which provides:

> All disputes or differences arising out of the Interpretations of this Agreement shall be submitted to the decision of two (2) Arbitrators, one to be chosen by each party, and in the event the Arbitrators fail to agree, to the decision of an Umpire to be chosen by the Arbitrators.

The arbitration clause also provides, "The arbitration proceedings shall take place in New York, New York." However, NU, by counsel, agreed to waive this provision and proceed with arbitration in Louisville, Kentucky, the domicile of the debtor. The Trustee vigorously contested NU's arbitration motion and propounded numerous arguments in favor of litigating the parties' dispute here in bankruptcy court. This court must now decide whether to enforce the arbitration clause to resolve the objection instead of conducting the usual evidentiary hearing.

### Legal Analysis

*Kentucky Law or the Federal Arbitration Act*

Although the parties agreed that any arbitration proceedings take place in New York, the Trustee argues that Kentucky law applies to this controversy and further contends that KRS 417.050, Kentucky's arbitration statute, exempts insurance contracts from coverage. However, the Federal Arbitration Act ("FAA"), is "pre-emptive of state law hostile to arbitration" as recently recognized by the U.S. Supreme Court in *Circuit City Stores, Inc.*

*v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 1306, 149 L.Ed.2d 234 (2001) (citing, *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)). Specifically, section 2 of the FAA applies to transactions involving commerce.

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. See *Circuit City Stores,* 121 S.Ct. at 1306. *See also, UHC Management Co., Inc. v. Computer Sciences Corp.,* 148 F.3d 992 (8th Cir.1998) (choice of law provision contained in arbitration clause did not preempt FAA in federal court proceeding); and *Ainsworth v. Allstate Ins. Co.,* 634 F.Supp. 52 (W.D.Mo.1985). The Court of Appeals of the Sixth Circuit has recognized the liberal federal policy favoring arbitration agreements, notwithstanding state substantive or procedural policies to the contrary. *Asplundh Tree Expert Company v. Bates,* 71 F.3d 592, 595 (6th Cir.1995) (citing, *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). According to the Court of Appeals, "[t]he Arbitration Act 'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id.* (citing, *Moses,* 103 S.Ct. at 941–42).

*Arbitration—Mandatory or Discretionary*

 The Trustee nonetheless argues that in a bankruptcy case, where the Trustee has invoked the claims process by objecting to NU's claim, this court should exercise its discretion and deny arbitration. Arbitration is mandatory unless the party opposing arbitration (here, the Trustee) is able to demonstrate that Congress intended to preclude waiver of judicial remedies by statute (i.e., the Bankruptcy Code). *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1156 (3d Cir.1989). The court must carefully determine whether any underlying purpose of the Code would be seriously and adversely affected by enforcing the arbitration clause. *United States v. American Steamship Owners Mutual Protection and Indemnity Assoc., Inc.,* 197 F.3d 631, 640 (2d Cir.1999). Some courts conclude that where actions are derived exclusively from the Code, such as preference, fraudulent conveyance, or violation of the discharge injunction proceedings, the bankruptcy court may exercise its discretion to deny arbitration after careful consideration. *See, National Gypsum Co. v. NGC Settlement Trust & Asbestos Claims Man. Corp.,* 118 F.3d 1056, 1069 (5th Cir. 1997), for a listing of examples of cases holding that the subject matter of the dispute to be arbitrated presented a conflict with the purposes and provisions of the Bankruptcy Code. For example, the Fifth Circuit concluded that permitting arbitration of an adversary proceeding brought to determine whether a creditor's collection efforts were barred by the § 524(a) discharge injunction or by the confirmation of the debtor's reorganization plan would be inconsistent with the Code. *Id.* at 1071.

Thus, we first analyze the specific relief sought by the Trustee in the objection to NU's claim. The Trustee argues that NU received more value from the debtor than NU was obligated to pay under the insurance policies. In other words, the Trustee contends that NU received more premi-

ums from the debtor than its actual losses totaled under the two insurance policies. The Trustee also claims that NU breached its duty of subrogation under the Indemnity Agreement. Procedurally, the Trustee has filed the claim objection and also recently filed an adversary proceeding seeking 1) turnover of any excess premiums received by NU under the policies, and 2) equitable subordination of NU's claim under 11 U.S.C. § 510(c).

Our determination centers on whether any conflict with the Code arises by virtue of enforcement of the arbitration clause. *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (holding claims under RICO and Security Exchange Act arbitrable and subject to the FAA). *See also, Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). If we determine that no conflict exists, the court is without discretion to refuse to enforce the arbitration clause.

The Sixth Circuit has not addressed the precise issue of arbitration in the context of a bankruptcy case. We adopt the analysis of the Fifth Circuit in the *National Gypsum* case, where the Court of Appeals held:

> Cognizant of the Supreme Court's admonition that, in the absence of an inherent conflict with the purpose of another federal statute, the Federal Arbitration Act mandates enforcement of contractual arbitration provisions, *McMahon,* 482 U.S. at 226–27, 107 S.Ct. at 2337–38, we refuse to find such an inherent conflict based solely on the jurisdictional nature of a bankruptcy proceeding. Rather, as did the Third Circuit in *Hays,* we believe that nonenforcement of an otherwise applicable arbitration provision turns on the underlying nature of the proceeding, *i.e.,* whether the proceeding

derives exclusively from the provisions of the Bankruptcy Code and, if so, whether arbitration of the proceeding would conflict with the purposes of the Code. In this regard, we agree with INA that the discretion enjoyed by a bankruptcy court to refuse enforcement of an otherwise applicable arbitration provision depends upon a finding that the standard set forth in *McMahon* has been met.

*National Gypsum Co. v. NGC Settlement Trust & Asbestos Claims Man. Corp.,* 118 F.3d 1056, 1067 (5th Cir.1997). *See also, Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149 (3d Cir.1989). In *National Gypsum,* the Fifth Circuit rejected the core versus non-core distinction for determining when to permit arbitration in the bankruptcy context as too broad. 118 F.3d at 1067. Emphasizing the mandatory nature of agreed arbitration provisions under Supreme Court precedent, the Fifth Circuit found the arbitration decision discretionary *only* where the objecting party demonstrates a specific conflict between enforcing an arbitration clause and the provisions of the Code. *Id. See also, Barkman, Inc. v. Granger Construction Co.,* 170 B.R. 321 (Bankr. E.D.Mich.1994).

■ The Trustee's objection to NU's claim concerns contract interpretation and accounting principles. Although procedurally these question arise by virtue of the "claims allowance process," the arbitration of this contractual dispute does not directly conflict with the Bankruptcy Code. Therefore, we conclude that the Trustee, standing in the shoes of the debtor, a party to the mutually agreed-upon arbitration clause contained in the Indemnity Agreement, must proceed to arbitrate the contractual dispute with NU.

■ With reference to the Trustee's equitable subordination claim against NU,

arising under 11 U.S.C. § 510(c), we find this cause of action unique to the bankruptcy process and outside the scope of the arbitration clause, and therefore, we decline to refer the Trustee's § 510(c) claim to arbitration. *See In re Barney's, Inc.*, 206 B.R. 336 (Bankr.S.D.N.Y.1997). We make no determination as to the merits of the Trustee's § 510(c) claim and elect to stay the Trustee's adversary proceeding (# 01–3002) pending a final decision by the arbitrators. Once the amount of NU's claim is determined by the arbitrators, this court will consider the Trustee's equitable subordination claim.

*Waiver by NU*

The Trustee raised numerous other reasons for the court to deny NU's motion to arbitrate. First, the Trustee argued that by filing a proof of claim, NU waived its right to enforce the arbitration clause and submitted itself to the jurisdiction of the bankruptcy court. Bankruptcy courts uniformly hold that filing a proof of claim does not waive a party's right to invoke an arbitration provision. *In re Statewide Realty Co.*, 159 B.R. 719, 724 (Bankr.D.N.J. 1993) (A creditor's act of filing a claim does not constitute waiver as claimant has but one forum and method to enforce its rights). *See also Mor–Ben Insurance Markets Corp., v. Trident General Ins. Co., Ltd.*, 73 B.R. 644 (9th Cir. BAP 1987).

Second, the Trustee argued that NU's delay in moving to enforce the arbitration clause should operate as a waiver of its right to arbitrate. The Trustee filed his objection to NU's claim on July 29, 1999, and NU moved to arbitrate the claim on October 23, 2000, after, argues the Trustee, the parties had engaged in "extensive litigation." NU counters that until the time it filed the arbitration motion, it did not understand the true nature of the dispute. After producing documents to the Trustee and conferring with the Trustee in attempts to settle the matter, it became clear to NU that the dispute was covered by the arbitration clause contained in the Indemnity Agreement. NU points out that part of the delay resulted from a joint motion by the Trustee and NU on March 7, 2000 requesting the court to reschedule a status conference until June, 2000 because the parties were engaged in preliminary settlement discussions and had not yet finalized the issues and therefore could not, at that point, proceed with the Trustee's objection to NU's claim.

When determining whether delay in demanding arbitration results in waiver of the right to arbitrate, courts focus on the effect of the delay upon the party opposing arbitration. *Saga Communications of New England, Inc. v. Voornas*, 756 A.2d 954 (Me.2000). The party seeking to enforce an arbitration clause must demand arbitration within a reasonable time after the filing of the action at law by the opposing party. *American Locomotive Co. v. Gyro Process Co.*, 185 F.2d 316 (6th Cir.1950). This court finds counsel for NU's explanation regarding the timing of the arbitration motion reasonable in light of the complexity of the issues in this case, and therefore, we find no waiver by NU by virtue of the delay in demanding enforcement of the arbitration provision. The court has not yet engaged in any proceedings on the merits of NU's claim. Further, no prejudice will result from NU's delay in requesting arbitration as any discovery undertaken by the parties may be used in preparing for the arbitration proceedings.

*Delay and Expense of Arbitration*

Both the Trustee and the court raised the question of the delay and expense to the bankruptcy estate in proceeding to arbitration. However, the case law

clearly provides that delay and expense associated with the arbitration itself are insufficient reasons to deny arbitration. *General Guaranty Ins. Co. v. New Orleans General Agency, Inc.*, 427 F.2d 924 (5th Cir.1970). *See also, In re Berman Enterprises, Inc.*, 168 B.R. 18 (Bankr.E.D.N.Y. 1992). As previously noted, NU agreed to proceed with arbitration in Kentucky to lower the expense to the estate.

### Consideration

According to the Trustee, the Indemnity Agreement lacked consideration and is unenforceable because the parties signed it *after* the insurance program began. The Indemnity Agreement which contains the arbitration clause is dated October 5, 1991. (See Exhibit A to pleading # 561). The parties to the Indemnity Agreement are National Union Fire Insurance Company of Pittsburgh, Pa. and Transport Associates, Inc. The Vice President of NU signed the Indemnity Agreement on June 12, 1992 in New York, New York, and Stephen R. Beck, Controller of the debtor, signed the Indemnity Agreement on May 6, 1992 in Louisville, Kentucky.

The Trustee argued that because the two insurance policies providing the debtor's coverage were issued prior to the signing of the Indemnity Agreement, the policies control in place of the Indemnity Agreement. The Indemnity Agreement provides otherwise: it is dated October 5, 1991, the same date the policies became effective, and it specifically provides that "the policies and all renewals thereof are governed by this Agreement." Further, the correspondence between the parties dated October 4, 1991 and the letter of credit provided by PNC Bank as security for the debtor's obligations under the insurance program dated October 23, 1991, constitute an offer by NU to provide insurance and an acceptance by the debtor

of the terms of the parties' agreement. (See Exhibits B, C, and D to pleading # 561). The debtor's letter accepting NU's offer specified that the insurance program became "effective 12:01 AM 10/5/91", which is the same date appearing on the first page of the Indemnity Agreement. The court finds that the Indemnity Agreement, which contains the arbitration clause, memorialized the terms of the insurance program agreed to by the parties and performed under the insurance policies beginning October 5, 1991. *See, e.g., Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592 (6th Cir.1995) (letter agreement was part of employment agreement containing arbitration clause). A mutual promise to be bound by an arbitration clause is adequate consideration to enforce such an agreement. *Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373 (4th Cir. 1998) (also emphasizing the liberal federal policy favoring arbitration).

### Parties Bound by the Arbitration Clause

The proof of claim was filed on behalf of NU, American Home Assurance Company, and Insurance Company of the State of Pennsylvania. The Trustee argues that Insurance Company of PA and American Home are not bound by the agreement to arbitrate because those two entities did not sign the Indemnity Agreement. However, the payment obligations of the debtor arising from the Indemnity Agreement required payments to be made to NU on all of the policies, including the policies issued by these two insurance companies which were not signatories to the Indemnity Agreement, making NU, the payee, the proper signatory to the Indemnity Agreement.

### ORDER

Pursuant to the court's Memorandum entered this same date and incorporated herein by reference,

IT IS ORDERED that the contract dispute between National Union Fire Insurance Company of Pittsburgh, Pa. and J. Baxter Schilling, Trustee, be and is hereby referred to arbitration pursuant to 9 U.S.C. §§ 1–14.