IN RE: David A. JORGE, Jr. and Natasha D. Jorge, Debtors.

CASE NUMBER 15-41949

United States Bankruptcy Court, N.D. Ohio.

Signed May 26, 2017

Philip D. Zuzolo, Zuzolo Law Offices, LLC, Niles, OH, for Debtor.

## MEMORANDUM OPINION REGARDING MOTION TO COMPEL ARBITRATION

Kay Woods, United States Bankruptcy Judge

Before the Court is Defendant's Motion to Compel Arbitration and Stay Related Contested Matter ("Arbitration Motion") (Doc. 44) filed by Cellco Partnership d/b/a Verizon Wireless ("Verizon") on April 24, 2017. Verizon seeks an order staying this Court's further consideration of the Motion for Contempt (Doc. 29) filed by Debtors David A. Jorge, Jr. and Natasha D. Jorge on October 27, 2016 and compelling the Debtors to arbitrate the Motion for Contempt. On May 18, 2017, the Debtors filed Debtors' Response in Opposition to Verizon Wireless' [sic] Motion to Compel Arbitration ("Debtors' Response") (Doc. 45), in which the Debtors oppose arbitration of the Motion for Contempt.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and General Order No. 2012–7 entered in this district pursuant to 28 U.S.C. § 157(a). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b), 1408, and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The following constitutes the Court's findings of fact and conclusions of law pursuant to

Federal Rule of Bankruptcy Procedure 7052.

For the reasons set forth below, the Court will deny the Arbitration Motion.

## I. BACKGROUND

On October 23, 2015 ("Petition Date"), the Debtors filed a voluntary petition pursuant to chapter 7 of Title 11 of the United States Code ("Bankruptcy Code"). The filing of a bankruptcy petition operates as an automatic stay against specified collection efforts pursuant to 11 U.S.C. § 362.

The Debtors listed "Verizon" as a creditor with a pre-petition general unsecured claim of $797.39. (Doc. 1 at 32.) On March 4, 2016, the Court entered Order of Discharge (Doc. 24), which granted the Debtors a discharge pursuant to 11 U.S.C. § 727. A discharge in bankruptcy provides a debtor with an automatic injunction against specified collection efforts pursuant to 11 U.S.C. § 524.

In the Motion for Contempt, the Debtors allege that Verizon violated the automatic stay in 11 U.S.C. § 362 and the discharge injunction in 11 U.S.C. § 524, as set forth below.

The Motion for Contempt contains the following allegations regarding Verizon's violations of the automatic stay in 11 U.S.C. § 362. On or around around January 28, 2016, Verizon sent correspondence to the Debtors seeking payment of $497.89 because the Debtors' wireless services account was past due. Approximately one month later, on or about February 24, 2016, Verizon sent correspondence to the Debtors seeking payment in excess of $1,000.00. Verizon sent no less than four letters to the Debtors seeking collection of a pre-petition debt. In addition to sending these letters to the Debtors, Verizon called the Debtors no less than 27 times between January 28, 2016 and February 13, 2016.

The Debtors informed Verizon about their bankruptcy filing and that the Verizon claim was included therein. In order to cease receiving collection calls from Verizon, the Debtors changed to a different wireless services provider in February 2016.

The Motion for Contempt contains the following allegations regarding Verizon's violations of the discharge injunction in 11 U.S.C. § 524. Between April 4, 2016 and June 6, 2016, Verizon utilized two separate collection agencies—The CBE Group, Inc. ("CBE") and Convergent Outsourcing, Inc. ("Convergent")—to attempt to collect the discharged debt. CBE, as agent for Verizon, sent the Debtors correspondence dated April 4, 2016 seeking payment of a past due balance of $1,104.55. Convergent, as agent for Verizon, sent the Debtors correspondence dated June 6, 2016 stating that the Debtors owed $1,203.95, but Convergent would accept $963.16 in settlement of the claim. Because CBE and Convergent sent correspondence to the Debtors after entry of the Order of Discharge, the Debtors assert that Verizon's conduct in utilizing these collection agencies violated the discharge injunction.

On February 9, 2017, Verizon filed Response of Cellco Partnership d/b/a Verizon Wireless to Debtors' Motion for Contempt ("Verizon's Response") (Doc. 35), which includes the following allegations. Prior to the Petition Date, the Debtors entered into two contracts with Verizon: (i) a wireless services agreement, which covered four lines; and (ii) a separate agreement for wireless devices. Prior to the Petition Date, the Debtors removed two lines from the wireless services agreement, leaving two lines with Verizon. Verizon did not receive proper notice of the Debtors' bankruptcy filing because the Debtors sent notice to Verizon at a payment lock box. Despite the Debtors' improper notice, on November 12, 2015, Verizon issued the

Debtors a credit of $834.97 for pre-petition charges, leaving an account balance of $0.00 as of that date.

Beginning with the invoice dated December 7, 2015, all charges invoiced to the Debtors were incurred post-petition. The Debtors never terminated their account with Verizon and never indicated that they wanted to stop receiving wireless services from Verizon after the Petition Date. Based on 11 U.S.C. § 365(d)(1), Verizon could not terminate the Debtors' contract until 60 days after the Petition Date.[1] Notwithstanding 11 U.S.C. § 365(d)(1), Verizon "believ[ed] that the Debtors intended to maintain their post-petition services." (Verizon's Resp. ¶ 12.) Verizon admits that it attempted to collect from the Debtors beginning in January 2016, but it asserts that such collection efforts were only for charges that the Debtors incurred post-petition.

The Court held a hearing on the Motion for Contempt on April 20, 2017, at which appeared Ashley R. Hall, Esq. on behalf of the Debtors and Anthony J. DeGirolamo, Esq. on behalf of Verizon. At the hearing, it became apparent that the Motion for Contempt could not be resolved without the presentation of evidence. Accordingly, the Court scheduled the issues of whether Verizon willfully violated the automatic stay and the discharge injunction for an evidentiary hearing on July 19, 2017. (See Doc. 42.) The Court also set June 22, 2017 as the deadline for the completion of all discovery.

## II. ARGUMENTS OF THE PARTIES

### A. Verizon's Argument for Arbitration

Verizon alleges that, prior to the Petition Date, Debtor David A. Jorge entered into a contract with Verizon for multiple lines of wireless telecommunications services ("Contract"). Verizon further alleges that the Contract "contained a valid and binding agreement to arbitrate claims 'arising out of or relating to' the contract." (Arbitration Mot. at 2.)

In addition to filing the Motion for Contempt, Verizon asserts that the Debtors also filed an action in the Court of Common Pleas for Mahoning County, Ohio, Case No. 2016 CV 03347 ("State Court Action"). The State Court Action seeks monetary damages from Verizon for violations of the Telephone Consumer Protection Act and invasion of privacy by intrusion upon seclusion. Verizon asserts that the claims in the State Court Action are based on the same conduct set forth in the Motion for Contempt and come within the scope of the arbitration clause in the Contract. Verizon states that it has served a written demand upon the Debtors' counsel to arbitrate the disputes in the State Court Action.

Verizon's arguments for compelling arbitration, as set forth in the Arbitration Motion, can be summarized as follows:

1. The Contract between Verizon and Mr. Jorge is supported by sufficient consideration;

2. The Contract contains an arbitration clause that covers any dispute that in any way relates to or arises out of the Contract or from any services Mr. Jorge receives from Verizon;

3. The arbitration clause is valid and enforceable;

---

1. Pursuant to 11 U.S.C. § 365(d)(1), in a chapter 7 case, "if the trustee does not assume or reject an executory contract ... of personal property of the debtor within 60 days after the [petition date] ..., then such contract ... is deemed rejected." 11 U.S.C. § 365(d)(1) (2017). Neither the Chapter 7 Trustee nor the Debtors assumed any executory contracts.

4. The Contract is for wireless telecommunications services;

5. Wireless telecommunications services involve interstate commerce;

6. The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, applies to contracts involving interstate commerce;

7. The Debtors' claims for violations of the automatic stay and the discharge injunction fall within the scope of the arbitration clause; and

8. The Debtors' claims for violations of the automatic stay and the discharge injunction are core proceedings, but this Court should exercise its discretion to compel arbitration because (i) the automatic stay is no longer in effect; and (ii) the discharge injunction remains in effect.

## B. The Debtors' Argument Against Arbitration

The Debtors make no arguments concerning the validity of the pre-petition Contract, but argue that the arbitration clause in not valid because (i) the arbitration clause was rendered unenforceable after the Debtors received their discharge; and (ii) they did not sign a reaffirmation agreement to reaffirm the Contract. The Debtors also contend that, even if the arbitration clause is enforceable, the Arbitration Motion should be denied because this Court is the most appropriate forum to determine whether Verizon violated the automatic stay and the discharge injunction because (i) the discharge injunction is a court order; and (ii) Mrs. Jorge is not a party to the Contract with Verizon, so her claims cannot be subject to the arbitration clause. In addition, the Debtors state that, on April 27, 2017, they voluntarily dismissed the State Court Action without prejudice.

## III. ANALYSIS

■ In cases where the FAA applies, Verizon argues that a court must determine if arbitration of the particular dispute is appropriate.

First, the Court must decide whether the agreement, by its terms, reaches Mr. Jorge's claims. This step involves two separate inquiries: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the agreement. Second, the Court must determine whether any "legal constraints external to the parties' agreement foreclosed the arbitration of those claims" such as statutes identifying categories of claims for which arbitration agreements should be rendered unenforceable.

(Arbitration Mot. at 5–6 (citations omitted).) Based on the above criteria, the Court finds that compelling arbitration of the Debtors' claims is not appropriate.

## A. The Arbitration Clause Cannot Apply to Mrs. Jorge's Claims

■ First, the Court will address what is not in dispute. The Debtors do not dispute that there is a valid arbitration clause in the Contract. However, the Debtors assert that the Contract cannot govern any conduct by Verizon involving Mrs. Jorge because she did not execute the Contract. Verizon acknowledges that only Mr. Jorge is a party to the Contract.

The FAA cannot apply to any claims asserted by Mrs. Jorge because she has not agreed to arbitrate any claims she may possess. The policy for favoring arbitration, as set forth in the FAA, is based entirely on arbitration being a matter of contract, making an arbitration clause enforceable to the same extent as any other contract provision. Here, Verizon concedes that Mrs. Jorge is not a party to the

Contract or any contract that provides for arbitration and, thus, cannot be forced to submit her claims to arbitration. Instead, Verizon states:

> [Mr. Jorge] agreed to the arbitration provision by both signing the document which agreed to arbitration and incorporated specific terms by reference and by [sic] activating his phone. Accordingly, the Contract was accepted and became effective between the parties.
>
> * * *
>
> ... Further, permitting Ms. Jorge's claims to continue herein while Mr. Jorge's claims are subject to arbitration would be unnecessarily expensive, duplicative, and expose the parties to inconsistent outcomes from different forums.

(Arbitration Mot. at 4.) Expense, duplication of effort, and the possibility for inconsistent outcomes, however, have no bearing on the applicability of the FAA when—as here—a litigant such as Mrs. Jorge has never agreed to arbitration. Verizon cannot compel Mrs. Jorge to arbitrate her claims because she has never agreed to submit to arbitration.

Accordingly, this Court finds that there is no valid arbitration clause that applies to any claims asserted by Mrs. Jorge because she was not a party to the Contract. Mrs. Jorge has neither voluntarily nor contractually agreed to submit any claims to arbitration. Thus, an arbitrator has no authority over any claims asserted by Mrs. Jorge. The Court will deny the Arbitration Motion with respect to any claims asserted by Mrs. Jorge.

## B. The Arbitration Clause Is No Longer Enforceable

█ Verizon postulates that it is "well established that the 'rejection of a contract, or even breach of it, will not void an arbitration clause.'" (Arbitration Mot. at 6 (citing *Madison Foods, Inc. v. Fleming*

*Cos. (In re Fleming Cos.)*, 325 B.R. 687, 693–94 (Bankr. D. Del. 2005)).) However, this is not a universal conclusion. Indeed, *Jernstad v. Green Tree Servicing, LLC (In re Jernstad)*, No. 11 C 7974, 2012 WL 8169889 (N.D. Ill. Aug. 2, 2012) reached the opposite conclusion. In *Jernstad*, the district court held:

> The Court finds that Plaintiffs' bankruptcy discharge rendered the parties' Arbitration Agreement unenforceable. "What is discharged is a claim to payment." *Bethea v. Robert J. Adams & Assocs.*, 352 F.3d 1125, 1128 (7th Cir. 2003). Indeed, "one of the central purposes of the Bankruptcy Code ... is to give debtors a fresh start." *United States v. Johns*, 686 F.3d 438, 451 (7th Cir. 2012) (citations omitted). Necessarily then, the pre-bankruptcy Arbitration Agreement—entered into in consideration of the mortgage loan (outlining the borrower's promise to pay)—is unenforceable. Additionally, as Plaintiffs' point out, the parties did not sign a reaffirmation agreement. *See In re Turner*, 156 F.3d 713, 718 (7th Cir. 1998) ("A reaffirmation agreement is the only vehicle through which a dischargeable debt can survive a Chapter 7 discharge." (citations omitted)). Accordingly, the Court concludes that the Arbitration Agreement is not applicable to Plaintiff's claim under the FDCPA. Defendant's motion to compel arbitration is therefore denied.

*Id.* at *2 (emphasis added).

The lack of a reaffirmation agreement is not the only matter a court must consider when an arbitration clause is embedded in a contract that has been rejected by the debtor. A court must determine if the debtor is attempting to obtain some benefit that flows from the rejected agreement—*i.e.*, whether the debtor is attempting to use the rejected agreement as a

weapon. In *Harrier v. Verizon Wireless Pers. Commc'ns, LP (In re Harrier)*, 903 F.Supp.2d 1281 (M.D. Fla. 2012), a former customer brought an action against the wireless carrier alleging violations of the Florida Consumer Collection Practices Act and the Telephone Consumer Protection Act. The district court denied the wireless carrier's motion to compel arbitration. In ruling on the wireless carrier's motion for reconsideration, the district court held that the asserted claims were statutory and related to the wireless carrier's alleged conduct that occurred two years after entry of the former customer's bankruptcy discharge.

> In sum, this Court stands by its original holding that it would be inappropriate to compel arbitration under the facts of this case, which is consistent with the court's holding in *Jernstad*, that, under 11 U.S.C. § 524(c), the agreement between a 'holder of a claim and the debtor' is enforceable only to the extent that certain conditions, such as reaffirmation of the agreement, are met. Importantly, [the former customer] is not using the agreement as a 'weapon' in this case.

*Id.* at 1284 (emphasis added).

In a similar case, *Green Tree Servicing, L.L.C. v. Fisher*, 162 P.3d 944 (Okla. Ct. App. 2007), the state court found that a dispute for alleged violations of the Oklahoma Consumer Protection Act and orders of the bankruptcy court did not fall within the scope of the arbitration clause. In that case, the borrower alleged that the creditor made numerous telephone calls to his home and place of business, post-discharge, regarding a manufactured home in which the creditor had a security interest. The state court held:

> Here, acts giving rise to [the borrower]'s cause of action are not based upon duties imposed by contract or statute that are brought into play by virtue of

the contract or financing agreement as in *Conseco* [*Fin. Serv. Corp. v. Wilder*, 47 S.W.3d 335 (Ky. Ct. App. 2001)]. [The creditor]'s alleged attempt to improperly collect money or property that was no longer due from [the borrower] or in his possession occurred after the contractual relationship had been terminated by discharge in bankruptcy. Just as in *Gitgood* [*v. Howard Pontiac-GMC, Inc.*, 57 P.3d 875 (Okla. Ct. App. 2002)], the acts giving rise to the cause of action did not have their roots in the former contract, but in alleged behavior that occurred *subsequent* to the contract's termination, and which did not arise as a *natural* consequence of the contract.

*Id.* ¶ 17 (emphasis added).

The facts currently before this Court are similar to the facts in the cases cited above. Mr. Jorge neither assumed the Contract nor entered into a reaffirmation agreement with respect thereto. Furthermore, Mr. Jorge is not attempting to take advantage of the Contract while simultaneously seeking not to honor his agreement to arbitrate. Indeed, the Debtors' Motion for Contempt does not rely on any term of the Contract, but instead alleges violations of the automatic stay and the discharge injunction. These allegations have nothing to do with the terms of the Contract. The subject of the Contract is the provision of wireless services. Mr. Jorge and Verizon's agreement to arbitrate claims arising out of or relating to the Contract is wholly inapplicable to Mr. Jorge's claims for violation of the automatic stay and the discharge injunction. Like the *Jernstad* and *Harrier* courts, this Court finds that, under the circumstances, the arbitration clause is not enforceable with respect to the claims in the Motion for Contempt. Moreover, unenforceability of the arbitration clause is the only conclusion that this Court can reach regarding

the claims asserted by Mrs. Jorge in the Motion for Contempt because she is not a party to the Contract and she never agreed to arbitrate any claims. Accordingly, the Court will deny the Arbitration Motion.

## C. The Claims for Violations of the Automatic Stay and the Discharge Injunction Are Core and Arise Exclusively From the Bankruptcy Code

There is no dispute that the claims for violations of the automatic stay and the discharge injunction contained in the Motion for Contempt constitute core proceedings as defined in 28 U.S.C. § 157(b)(2). (*See* Arbitration Mot. at 7–8 and Debtor's Resp. at 4.) Although Verizon concedes that the claims in the Motion for Contempt are "core" proceedings, that does not mean that the arbitration clause may not be applicable to the claims asserted by Mr. Jorge in the Motion for Contempt.

The seminal case regarding how to determine whether claims should be arbitrated is *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Although "the [FAA], standing alone, . . . mandates enforcement of agreements to arbitrate[,]" the United States Supreme Court has observed, "the [FAA]'s mandate may be overridden by a contrary congressional command." *Id.* at 226, 107 S.Ct. 2332. In *McMahon*, the Supreme Court promulgated a three-factor test to determine the intent of Congress: (i) the text of the statute; (ii) the statute's legislative history; and (iii) whether there exists an inherent conflict between arbitration and the underlying purposes of the statute. *See id.* at 227, 107 S.Ct. 2332.

The Bankruptcy Code does not mention arbitration and there is nothing in the legislative history of the Bankruptcy Code that indicates a Congressional intent concerning arbitration in the bankruptcy context. "Thus, in the bankruptcy context, the third factor [of the *McMahon* test] becomes dispositive: '[W]hether an inherent conflict exists between arbitration and the underlying purposes of the Bankruptcy Code.'" *Hooks v. Acceptance Loan Co.*, No. 2:10–CV–999–WKW, 2011 WL 2746238, at *3 (M.D. Ala. July 14, 2011) (quoting *The Whiting–Turner Contracting Co. v. Elec. Mach. Enters., Inc. (In re Elec. Mach. Enters., Inc.)*, 479 F.3d 791, 796 (11th Cir. 2007)).

To this court's knowledge, no court of appeals has ever concluded that arbitration of a non-core proceeding would produce an inherent conflict between the FAA and the Bankruptcy Code. At the same time, both the Fifth and Eleventh Circuits have indicated a willingness to compel arbitration over core proceedings when the party opposing arbitration fails to meet its burden of showing that arbitration of the core proceeding inherently conflicts with the Bankruptcy Code. *See In re Nat'l Gypsum Co.*, 118 F.3d 1056, 1067 (5th Cir. 1997) (conceding that the core/non-core distinction is practical, but finding that it is "too broad" and stating that "[i]t is doubtful that 'core' proceedings, categorically, meet the [*McMahon*] standard"); *In re Elec. Mach. Enter., Inc.*, 479 F.3d at 798–99 ("[E]ven if we were to find that EME's claim against Whiting–Turner constitutes a core proceeding, we find that EME did not sustain its burden under *McMahon* to demonstrate that Congress intended to limit or prohibit waiver of a judicial forum for the type of claim that EME brought against Whiting–Turner. . . . Therefore, even if this dispute is in fact core, it is still subject to arbitration.").

*Id.*

Verizon asserts, "Arbitration of the claims raised in the Motion [for Contempt]

is especially appropriate in this instance, where a core proceeding [—*i.e.*, the claims for violations of the automatic stay and the discharge injunction—] is coupled with a non-core state court action involving a different federal statute and state law claims, and resolution of the core proceeding through arbitration will not interfere with the purposes of the Bankruptcy Code." (Arbitration Mot. at 9.)

The Debtors voluntarily dismissed the State Court Action on April 27, 2017. (Debtors' Resp. at 2.) Since the State Court Action is no longer pending, Verizon's arguments regarding the applicability of the arbitration clause to the allegations in the State Court Action are now moot. Moreover, Verizon's argument that arbitration of the claims in the Motion for Contempt is especially appropriate because these claims "are coupled" with the State Court Action no longer has any factual basis. Because the Debtors have dismissed the State Court Action, there is no longer any possibility for inconsistent outcomes by different tribunals in determining this Motion for Contempt and the State Court Action. Nor will "such parallel litigation ... increase costs and the burden on the courts." (Arbitration Mot. at 9.) Thus, the Court finds that Verizon's arguments concerning the State Court Action are moot.

The Court will next focus on whether the Debtors' claims in the Motion for Contempt fall within the scope of the arbitration clause. Verizon states:

> By its terms, the Contract arbitration provision covers "ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY ... SERVICES YOU RECEIVE FROM US." <u>Exhibit 1</u>. The arbitration agreement is therefore a "broadly-worded" clause including all disputes between the parties.

> The claims made by Mr. Jorge all arise out of and relate to the Contract because they are based on allegations of letters or calls made in connection with the service provided by Verizon Wireless under the contract. *See Motion [for Contempt]*, Pages 1–2. The Claims in the Motion [for Contempt] are therefore within the scope of the arbitration provision contained in the Contract.

(*Id.* at 7.)

As set forth above, Verizon acknowledges that only Mr. Jorge executed the Contract. Thus, only Mr. Jorge's claims can arise out of or relate to the provision of services under the Contract. Consequently, all of Verizon's arguments concerning the enforceability of the arbitration clause cannot, as a matter of law, apply to the claims asserted by Mrs. Jorge.

■ Because the arbitration clause is broadly worded, it may encompass the claims asserted by Mr. Jorge in the Motion for Contempt. Mr. Jorge's claims can be said to "relate to" the Contract because the pre-petition relationship between Verizon and Mr. Jorge is based on the Contract. However, the claims in the Motion for Contempt do not "arise out of" the Contract. Even if Mr. Jorge's claims "relate to" the Contract, this Court has the discretion not to compel arbitration because there is an inherent conflict between the FAA and the underlying purposes of the Bankruptcy Code in enforcing the automatic stay and the discharge injunction.

Verizon mischaracterizes the nature of the claims in the Motion for Contempt. The Debtors do not allege that the correspondence and calls from Verizon and its agents to collect the pre-petition debt violated the Contract. Instead, the Debtors seek an order of this Court holding Verizon in contempt of court based on conduct

that allegedly violated the automatic stay in 11 U.S.C. § 362 and the discharge injunction in 11 U.S.C. § 524. The Motion for Contempt does not seek damages because Verizon and its agents breached the Contract. Indeed, the Contract does not have any bearing on whether Verizon violated the Bankruptcy Code when it sent correspondence to and called the Debtors.

Verizon acknowledges that the Debtors' Motion for Contempt is based on alleged violations of the automatic stay in 11 U.S.C. § 362 and the discharge injunction in 11 U.S.C. § 524 and that "these provisions are unique to bankruptcy matters." (*Id.* at 8 (emphasis added).) Despite recognizing that the Debtors' claims are based on the Bankruptcy Code, Verizon goes on to assert that "there is no conflict in allowing Mr. Jorge's claims to be determined in arbitration." (*Id.*) This statement, however, is not correct; there is an inherent conflict.

As noted by the bankruptcy court in *In re Transp. Assocs., Inc.*, 263 B.R. 531 (Bankr. W.D. Ky. 2001), "The Sixth Circuit has not addressed the precise issue of arbitration in the context of a bankruptcy case." *Id.* at 535. Accordingly, the bankruptcy court adopted the analysis of the Fifth Circuit Court of Appeals in *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056 (5th Cir. 1997), in which the Fifth Circuit held that there was not an inherent conflict between the Bankruptcy Code and the FAA and stated:

> Cognizant of the Supreme Court's admonition that, in the absence of an inherent conflict with the purpose of another federal statute, the Federal Arbitration Act mandates enforcement of contractual arbitration provisions, [*Shearson/American Express, Inc. v. McMahon,* 482 U.S.

220, 225–26, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) ], we refuse to find such an inherent conflict based solely on the jurisdictional nature of a bankruptcy proceeding. Rather, as did the Third Circuit in *Hays* [*& Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3d Cir. 1989) ], we believe that nonenforcement of an otherwise applicable arbitration provision turns on the underlying nature of the proceeding, *i.e.*, whether the proceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether arbitration of the proceeding would conflict with the purposes of the Code.

*Transp. Assocs.*, 263 B.R. at 535 (quoting *Nat'l Gypsum*, 118 F.3d at·1067) (emphasis added). In *Transport Associates*, the bankruptcy court was not dealing with violations of the automatic stay and the discharge injunction, but rather was concerned with the trustee's objection to a proof of claim filed by the debtor's insurance company. Under those very different circumstances, the bankruptcy court found that the claim objection concerned contract interpretation and accounting principles. The bankruptcy court stated, "Although procedurally these question [sic] arise by virtue of the 'claims allowance process,' the arbitration of this contractual dispute does not directly conflict with the Bankruptcy Code." *Id.* Consequently, the bankruptcy court required the trustee, in accordance with the arbitration clause in the debtor's insurance policy, to submit his objection to the proof of claim to arbitration because doing so would not conflict with any underlying purpose of the Bankruptcy Code. The bankruptcy court did not, however, compel arbitration of the trustee's claims for equitable subordination against the insurer because those claims did not involve contract interpretation.

In the instant case, the claims in the Motion for Contempt "derive exclusively" from the provisions of the Bankruptcy Code and would "conflict with the purposes of the Code." Verizon, itself, acknowledges that the claims in the Motion for Contempt are unique to the Bankruptcy Code. In contrast to the claim objection in *Transport Associates*, the Debtors' claims for violations of the automatic stay in 11 U.S.C. § 362 and the discharge injunction in 11 U.S.C. § 524 do not involve contract interpretation and/or accounting. Instead, the Debtors seek a finding of contempt from this Court for Verizon's actions. Relief from creditors and receipt of a discharge are the quintessential purposes of chapter 7 of the Bankruptcy Code. Violations of the discharge injunction go to the heart of whether a debtor receives the "fresh start" to which he or she is entitled by virtue of that discharge. Therefore, arbitration of alleged violations of the automatic stay and the discharge injunction would conflict with the basic, underlying purposes of the Bankruptcy Code.

In *Ackerman v. Eber (In re Eber)*, 687 F.3d 1123 (9th Cir. 2012), the Ninth Circuit Court of Appeals affirmed denial of a motion to compel arbitration by an insurance company. The creditors in *Eber* had filed an adversary proceeding to determine the dischargeability of a debt under 11 U.S.C. § 523(a)(2), (4), and (6); however, they asserted that an arbitrator should determine liability and the amount of damages by attempting to characterize such claims as state law breach of contract, fraud, and breach of fiduciary duty claims—*i.e.*, non-core claims. The Ninth Circuit noted that bankruptcy courts have exclusive jurisdiction to determine dischargeability of debts under 11 U.S.C. § 523(a)(2), (4), and (6). Despite finding no blanket exception to arbitration in the FAA for Bankruptcy Code issues, the Ninth Circuit held:

> We agree with the district court's conclusion that implicit in the bankruptcy court's reasoning is the conclusion that allowing an arbitrator to decide issues that are so closely intertwined with dischargeability would "conflict with the underlying purposes of the Bankruptcy Code." ... When a bankruptcy court considers conflicting policies as the bankruptcy court did here, we acknowledge its exercise of discretion and defer to its determinations that arbitration will jeopardize a core bankruptcy proceeding.

*Id.* at 1130–31 (citations omitted) (emphasis added).

This Court finds that the claims for violations of the automatic stay and the discharge injunction in the Motion for Contempt derive exclusively from the provisions of the Bankruptcy Code and arbitration of those claims would conflict with the purposes of the Bankruptcy Code. Thus, this Court has the discretion not to compel arbitration of Mr. Jorge's claims where, as here, there is an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code.

**D. The Discharge Injunction in 11 U.S.C. § 524 Is No Different From an Injunction Issued by Specific Court Order**

 Even though the discharge injunction is statutory, it is the same as an injunction entered by order of this Court and, thus, this Court can and should determine if there has been a violation of the discharge injunction. Congress has made it clear that 11 U.S.C. § 524 has actual injunctive force. The discharge injunction protects the Debtors because this Court

entered the Order of Discharge.[2] The Order of Discharge is a "decree[ ] of a federal court of bankruptcy entered in the exercise of a jurisdiction essentially <u>federal</u> and <u>exclusive</u> in character." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) (emphasis added).

■■■■ The discharge injunction in 11 U.S.C. § 524 automatically became effective upon the entry of the Order of Discharge, but could not be effective before the entry of such order. The remedy to enforce an injunction is a contempt citation. *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002) (citations and parenthetical omitted) (For a violation of the discharge injunction, "contempt is the appropriate remedy and no further remedy is necessary."); *accord Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422 (6th Cir. 2000) (finding no private right of action for violations of 11 U.S.C. § 524 because "Congress knew that courts were enforcing § 524 through contempt proceedings, and Congress knew how to create a private right of action when it wished to do so, but in this instance it elected to do nothing."). By filing the Motion for Contempt, the Debtors have properly invoked the jurisdiction of this Court to obtain the appropriate remedy for the alleged violations of the discharge injunction. The parties, whether through a predispute arbitration agreement or any other agreement, cannot strip a court of its inherent power and certainly not the inherent power to enforce its own orders. Violations of the discharge injunction are inherently non-arbitrable because the discharge injunction vindicates a federal right

that this Court previously awarded the Debtors—*i.e.*, the bankruptcy discharge.

In *Hooks v. Acceptance Loan Company*, No. 2:10–CV–999–WKW, 2011 WL 2746238 (M.D. Ala. July 14, 2011), the district court denied a motion to compel arbitration of claims for violations of the discharge injunction. The court noted, "[A]ctions to enforce the discharge injunction are core proceedings because they call on a bankruptcy court to construe and enforce its own orders." *Id.* at *4 (citations and parentheticals omitted). The district court held:

And, although being a core proceeding does not automatically foreclose arbitration, it would seem anomalous to allow an arbitrator to construe a court's order in a contempt setting. As a general matter, allowing arbitration of contempt proceedings would effectively strip the courts of their primary enforcement mechanism. The contempt power of a court has been described by the Supreme Court as "[indispensable], because [it] [is] necessary to the exercise of all other [powers]." More specifically, arbitration of § 105(a) contempt proceedings would inherently conflict with the Bankruptcy Code, undermining the bankruptcy court's authority to enforce its orders. Even though these causes of action are not § 105 contempt proceedings, granting the motions to compel arbitration would nevertheless send to arbitration a dispute that, on its merits, squarely implicates the court's contempt power.

*Id.* at *5 (internal citations omitted); *see also Credit One Fin. v. Anderson (In re Anderson)*, 553 B.R. 221, 232–33 (Bankr. S.D.N.Y. 2016), *aff'd* 550 B.R. 228

---

**2.** Only this Court could grant the Debtors a discharge; the Debtors could not file an action seeking a discharge order in another tribunal based on their bankruptcy case filed in this Court. The only way to receive a discharge is to be a "debtor" (as defined in 11 U.S.C. § 101(13)), which requires commencing a bankruptcy case in the United States Bankruptcy Court.

(S.D.N.Y. 2016) (citations, parentheticals, and n.9 omitted) ("This objective [of a fresh start] is predominantly achieved through the discharge, and, therefore, the question of whether a discharge injunction has been violated is essential to proper functioning of the Bankruptcy Code, and arbitration is inadequate to protect such core, substantive rights granted by the Code.").[3]

Thus, this Court finds that violations of the discharge injunction are not appropriate for arbitration.

### E. Violations of the Automatic Stay Are Substantive Bankruptcy Rights and Are Not Appropriate for Arbitration

■ Likewise, violations of the automatic stay are within the substantive rights granted by the Bankruptcy Court and should not be sent to arbitration. In *Walker v. Got'cha Towing & Recovery, LLC (In re Walker)*, 551 B.R. 679 (Bankr. M.D. Ga. 2016), the bankruptcy court found that "any rights arising from a violation of the automatic stay are substantive rights created by the Bankruptcy Code and are thus quintessentially core matters." *Id.* at 686 (citations and parentheticals omitted). The court held:

Congress has tasked *this Court* with administering the protections of the automatic stay.

* * *

... In evaluating a tension between the procedures established by these two bodies of law, courts must be careful not to use a broad brush favoring arbitration to paint over the intricate bankruptcy process crafted by Congress. To require arbitration in the stay violation context does just that.

The automatic stay serves a multiplicity of interests. "[A] stay violation is not just a private injury. It strikes at the entire bankruptcy system and all parties for whom it was designed." On the other hand, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." ... Because the bankruptcy system implicates interests far broader than the private rights of the two parties to the contract in question, it is not unusual for prepetition contractual obligations, particularly those dictating forum or waiving the protections of the automatic stay, to be modified or even ignored in a bankruptcy case. Accordingly, to require arbitration of a stay violation does not serve the core purpose of the FAA and runs roughshod over the considerations that influence bankruptcy courts not to enforce similar prepetition contractual provisions.

*Id.* at 689–91 (citations, parentheticals, and n.21–22 omitted).

■ Indeed, a violation of the automatic stay is so important to the authority of bankruptcy courts that such courts have the power to raise the issue *sua sponte* without a motion from a party in interest. *See Elder–Beerman Stores Corp. v. Thomasville Furniture Indus. (In re Elder–Beerman Stores Corp.)*, 195 B.R. 1019, 1023 (Bankr. S.D. Ohio 1996) (internal citations and parentheticals omitted) ("Had the parties not raised the issue of the automatic stay, the court would still be empowered to address stay violations *sua sponte*. Bankruptcy courts then have the power, whether on the request of a party in interest or *sua sponte*, to consider both

---

**3.** The district court decision in *Anderson* is currently on appeal to the Second Circuit Court of Appeals.

what acts constitute a violation of the stay and whether or not relief from stay is appropriate.").

For the reasons set forth above, the Court finds that violations of the automatic stay are not appropriate for arbitration.

## F. The Cases Cited by Verizon Are Distinguishable

Although Verizon cites many cases in its Arbitration Motion, few deal with arbitration of violations of the automatic stay or the discharge injunction. Verizon cites *MBNA America Bank, N.A. v. Hill*, 436 F.3d 104 (2nd Cir. 2006) for the proposition that "post-discharge arbitration of alleged stay violations would not necessarily jeopardize or inherently conflict with the Bankruptcy Code." (Arbitration Mot. at 8.) That case involved a chapter 7 debtor who filed a putative class action against the creditor bank alleging that the creditor's post-petition monthly withdrawals from the debtor's bank account were willful violations of the automatic stay. The bankruptcy court denied the motion to arbitrate on the basis that the bankruptcy court was the most appropriate forum to adjudicate the debtor's claim because an 11 U.S.C. § 362 cause of action is strictly a product of the Bankruptcy Code, the debtor's case was still open, and the debtor required the protection of the automatic stay. The district court affirmed, finding that allowing arbitration to go forward would seriously jeopardize the objectives of the Bankruptcy Code because the automatic stay serves the same function as an injunction. The Second Circuit Court of Appeals reversed, finding, among other things:

[A]s a purported class action, [the debtor]'s claims lack the direct connection to her own bankruptcy case that would weigh in favor of refusing to compel arbitration[.]

... [T]he fact that [the debtor] filed her § 362(h) claim as a putative class action further demonstrates that the claim is not integral to her individual bankruptcy proceeding. By tying her claim to a class of allegedly similarly situated individuals, many of whom are no longer in bankruptcy proceedings, she demonstrates the lack of close connection between the claim and her own underlying bankruptcy case.

*Id.* at 109–10 (emphasis added).

The two other cases cited by Verizon— *Belton v. GE Capital Consumer Lending, Inc. (In re Belton)*, Nos. 15 CV 1934(VB), 15 CV 3311(VB), 2015 WL 6163083 (S.D.N.Y. Oct. 14, 2015) and *Williams v. Navient Solutions, LLC (In re Williams)*, 564 B.R. 770 (Bankr. S.D. Fla. 2017)—also involved motions to compel arbitration of putative class action violations in the context of violations of the discharge injunction. In contrast, in the instant case, the Debtors have not filed a putative class action and seek only to redress their own rights for Verizon's alleged violations of the automatic stay and the discharge injunction. *See Merrill v. MBNA Am. Bank, N.A. (In re Merrill)*, 343 B.R. 1, 8–9 (Bankr. D. Me. 2006) (denying a motion to arbitrate violations of the automatic stay and noting that one of the three factors relied on by the court in *Hill* was the debtor's attempt to seek class certification of allegedly similar individuals, many of whom were no longer in bankruptcy proceedings).

## IV. CONCLUSION

Because Mrs. Jorge is not a party to the Contract, the arbitration clause is inapplicable to all claims asserted by Mrs. Jorge. Because the Contract was rejected pursuant to 11 U.S.C. § 365(d)(1) and the Debtors did not reaffirm the Contract, the arbitration clause is unenforceable with

respect to any claims for violations of the automatic stay and the discharge injunction. The claims for violations of the automatic stay and the discharge injunction are core bankruptcy proceedings and do not implicate interpretation of the Contract; instead, such claims are unique to bankruptcy proceedings (as Verizon acknowledges). Even if Mr. Jorge's claims "relate to" the Contract and fall within the broad scope of the arbitration clause, this Court will exercise its discretion not to compel arbitration of the Motion for Contempt because, in this case, there is an inherent conflict between the FAA and the underlying purposes of the Bankruptcy Code. Any violation of the discharge injunction is a violation of the Order of Discharge. This Court—not an arbitrator—has the right to enforce its own orders. For these reasons, compelling arbitration of the Motion for Contempt is not appropriate. Accordingly, the Court will deny the Arbitration Motion.

An appropriate order will follow.

## ORDER DENYING MOTION TO COMPEL ARBITRATION

Before the Court is Defendant's Motion to Compel Arbitration and Stay Related Contested Matter ("Arbitration Motion") (Doc. 44) filed by Cellco Partnership d/b/a Verizon Wireless ("Verizon") on April 24, 2017. Verizon seeks an order staying this Court's further consideration of the Motion for Contempt (Doc. 29) filed by Debtors David A. Jorge, Jr. and Natasha D. Jorge on October 27, 2016 and compelling the Debtors to arbitrate the Motion for Contempt. On May 18, 2017, the Debtors filed Debtors' Response in Opposition to Verizon Wireless' [sic] Motion to Compel Arbitration (Doc. 45), in which the Debtors oppose arbitration of the Motion for Contempt.

For the reasons set forth in the Court's Memorandum Opinion Regarding Motion to Compel Arbitration entered on this date, the Court hereby finds:

1. Only Mr. Jorge signed the Contract. Because Mrs. Jorge is not a party to the Contract, the arbitration clause is inapplicable to all claims asserted by Mrs. Jorge;

2. Verizon cannot compel Mrs. Jorge to arbitrate any claims she may possess;

3. Because the Contract was rejected pursuant to 11 U.S.C. § 365(d)(1) and the Debtors did not reaffirm the Contract, the arbitration clause is unenforceable with respect to any claims for violations of the automatic stay in 11 U.S.C. § 362 and the discharge injunction in 11 U.S.C. § 524;

4. The claims for violations of the automatic stay in 11 U.S.C. § 362 and the discharge injunction in 11 U.S.C. § 524 are core bankruptcy proceedings, which Verizon acknowledges are unique to bankruptcy proceedings;

5. The claims for violations of the automatic stay in 11 U.S.C. § 362 and the discharge injunction in 11 U.S.C. § 524 do not implicate interpretation of the Contract;

6. In this case, there is an inherent conflict among the FAA and the underlying purposes of the Bankruptcy Code;

7. This Court has the right to enforce its own orders, including the Order of Discharge; and

8. Compelling arbitration of the Motion for Contempt is not appropriate.

Accordingly, the Court hereby denies the Arbitration Motion.

**IT IS SO ORDERED.**